CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

March 31, 2011

Timothy Mering, Esq.
Mering & Schlitz
343 N. Charles Street, 3rd Floor
Baltimore, MD 21201

Alex S. Gordon, AUSA
36 S. Charles Street
4th Floor
Baltimore, MD  21201

**Re: Dekova Knight v. Michael J. Astrue, Commissioner of Social Security, PWG-09-1803**

Dear Counsel:

Pending, by the parties' consent, are Cross-Motions for Summary Judgment concerning the Commissioner's decision denying Ms. Knight' claim for Supplemental Security Income ("SSI"). (ECF Nos. 8, 15, 27). Plaintiff also filed a Response to Defendant's Motion (ECF No. 28).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).  A hearing is unnecessary. Local Rule 105.6. For the reasons that follow, this Court DENIES the Commissioner's Motion, and GRANTS the Plaintiff's Alternative Motion for Remand.

Ms. Knight ("Claimant") applied for SSI on November 1, 2002, alleging that she was disabled due to her status as HIV positive, a bi-polar disorder, schizophrenia, anorexia, ankle injuries, anxiety, and herpes simplex I & II. (Tr. 24, 68). Her claim was denied initially and upon reconsideration. (Tr. 29-31). After a hearing on October 1, 2007, before the Honorable Robert W. Young ("ALJ") the ALJ denied Ms. Knight's claim and concluded in a decision dated February 29, 2008, that her asymptomatic HIV and affective disorder (bipolar) were "severe" impairments as defined in the Regulations, but they did not

meet, or medically equal, any of the Listed Impairments. (Tr. 16). The ALJ also found that Claimant retained the residual functional capacity ("RFC") to perform a range of light work.(Tr. 23). Based on her RFC, the ALJ found that Claimant could not perform any of her past relevant work ("PRW"). (Tr. Id.). After receiving testimony from a vocational expert ("VE"), the ALJ concluded that work existed in the national and local economies in significant numbers which Ms. Knight could perform. Accordingly, the ALJ found that Claimant was not disabled.(Tr. 14-28). On June 2, 2009, the Appeals Council denied Ms. Knight's request for review, making her case ready for judicial review. (Tr. 6-9).

Claimant argues, *inter alia,* that the ALJ erred in determining whether she met a Listing, in determining her RFC, and in finding that there was work she could perform. She also argues that the ALJ improperly rejected the opinions her treating physician and erred in presenting hypotheticals to the VE. As explained below, I am persuaded by Claimant's arguments and conclude that the ALJ's decision is not supported by substantial evidence, and therefore DENY the Commissioner's Motion and GRANT the Plaintiff's Alternative Motion for Remand.

The Court finds that the ALJ erred at steps four and five of the sequential evaluation in evaluating Ms. Knight's mental RFC and in presenting hypotheticals to the VE.[1] The ALJ failed

---

[1] The ALJ also erred at step two when considering Ms. Knight's mental impairments. The parties do not dispute that Ms. Knight suffers from an affective disorder, classified under Listing 12.04, and that it is severe. However, there also is evidence-- not discussed by the ALJ other than in a summary fashion-- that Ms. Knight has a personality disorder, classified under Listing 12.08, and that it is severe, as defined in the Regulations. On October 31, 2005, Dr. Linda Payne completed a Psychiatric Review Technique Form ("PRTF") and stated *inter alia* that Claimant was diagnosed with a personality disorder, and had a bipolar disorder. Dr. Steven Hirsch stated that Claimant had a guarded prognosis due to her significant long term bipolar disorder **and a personality diagnosis** in the area of narcissistic perhaps histrionic.(Tr. 201,271)(emphasis added). The ALJ did not provide any explanation as to what evidence he ultimately relied upon in determining that this additional mental impairment was not severe. This error is not *de minimus.* Errors such as those which occurred at step two in this case inevitably infect the ALJ's analysis at the subsequent steps. The Court cannot

2

to discuss whether he considered properly all of the evidence in determining Claimant's RFC. The ALJ found Ms. Knight's RFC was as follows:

> "The Claimant has the residual functional capacity to perform the exertional demands of light work as defined in 20 CFR 416.927(b) except she is limited to performance of routine repetitive tasks and work requiring only minimal interaction with co-workers and the general public." (Tr. 23).

The ALJ documented his specific findings as to the degree of limitation in each of the four areas of functioning described in paragraph(c) of §416.920a[3].(Tr. 23). However the ALJ's discussion of Ms. Knight's mental limitations at steps two and three was not an RFC assessment[4], and did not satisfy the ALJ's duties at step 4 of the sequential evaluation. SSR 96-8p, in relevant part, states as follows:

> [T]he adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria **are not an RFC assessment** but are used to

determine whether findings are supported by substantial evidence unless the agency clearly indicates the weight given all the relevant evidence. *Gordon v. Schweiker*, 725 F.2d 231 (4th Cir. 1984) *see also* SSR 96-6p (1996 WL 374180), SSR 82-62.

---

[3] The ALJ found that Ms. Knight had the following limitations: "mildly" limited in her activities of daily living; "moderately" limited in social functioning; "moderately" limited in ability to concentrate; and she experienced "no" episodes of decompensation. (Tr. 23).

[4] The Introduction to Listing 12.00 *Mental Disorders*, in relevant part, states: "**An assessment of your RFC <u>complements</u> the functional evaluation necessary for paragraphs B and C of the listings <u>by requiring consideration of an expanded list of work related capacities</u> that may be affected by mental disorders when your impairment is severe but neither meets nor is equivalent in severity to a listed mental impairment.**" *See* 20 CFR Pt. 404, Subpt.P, App. 1 (emphasis added); *See also* SSR 96-8p (1996 WL 374184).

3

rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. **The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process require a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF**. SSR 96-8p (1996 WL 374184, *4(S.S.A.)).(Emphasis added).

Surprisingly, the ALJ cited the above cited language in his decision yet failed to comply with it.(Tr. 23). The ALJ's RFC analysis did not include any of the required detailed findings. Rather, the ALJ stated, in a conclusory fashion, that Ms. Knight could perform "routine, repetitive simple tasks with minimal interaction with the general public." This was not an adequate assessment. *Hilton v. Barnhart* 2006 WL 4046076 (D. Kan.) citing *Wiederholt v. Barnhart,* 121 Fed. Appx. 833 (10th Cir. 2005)(the relatively broad unspecified nature of the description "simple" and unskilled" does not adequately incorporate the more specific findings required). The primary deficiency in this case is the ALJ's failure to explain whether, and/or why, he was discrediting the VE's testimony in response to questions that included the detailed assessment of "moderate" mental limitations in seven different areas. (Tr. 426-428). Equally important is the ALJ's failure to reference or discuss the Mental Residual Functional Capacity Assessment completed by the state agency physician, Dr. Lynda Payne, in his decision. *See* Exhibit 15-F (Tr. 108-110).

On October 31, 2005, Dr. Payne reviewed Ms. Knight's records and stated that she was "moderately" limited in her abilities to:

1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
2) work in coordination with or proximity to others without being distracted by them
3) complete a normal work-day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
4) interact appropriately with the general public;

4

5) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness;
6) respond appropriately to changes in the work setting; and;
7) travel in unfamiliar places or use public transportation.
See Exhibit 15-F (Tr. 278-281).

The RFC assessment **must always consider and address medical source opinions.** If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. SSR 96-8p (1996 WL 374184, *7) (S.S.A.))(emphasis added). Since this evidence was not discussed by the ALJ—and since the ALJ did not perform the function-by-function assessment described in SSR 96-8p[5]—the undersigned has no way of knowing whether the ALJ properly considered this evidence and consequently whether this evidence supports, or conflicts with, the ALJ's finding regarding Ms. Knight's RFC. All limits on work related activities resulting from the mental impairment must be described in the mental RFC assessment. SSR 85-16 *Residual Functional Capacity for Mental Impairments* (1985 WL 56855, *2) (S.S.A.)).

According to Social Security Ruling ("SSR") 96-8p, the mental activities required by competitive, remunerative, unskilled work include:

> Understanding, remembering and carrying out simple instructions.
> Making judgments that are commensurate with the functions of unskilled work-i.e., simple work related decisions.
> Responding appropriately to **supervision co workers and usual work situations dealing with changes in the work setting.**

(SSR 96-8p 1996 WL 374184 at *6)(Emphasis added).

---

[5] SSR 96-8p, in relevant part, states: Initial failure to consider an individual's ability to perform the specific work-related functions could be critical to the outcome of a case.(1996 WL 374184, *3 (S.S.A.))

5

The above listed limitations found by Dr. Payne are clearly relevant to unskilled work, but this evidence was not discussed by the ALJ in his decision, and more importantly, when these precise limitations were included in the hypotheticals presented to the VE, the VE stated no work existed for such an individual who had the limitations referred to in Exhibit 15-F.(Tr. 428).

Ms. Knight also argues that she meets the criteria of Listing 12.04 and that the ALJ failed properly to analyze the opinions of her treating physicians, Dr. Balu. The Commissioner counters that the ALJ properly considered the criteria of the relevant Listing and adequately discussed the basis for his findings in his decision. *See* Defendant's Memorandum, pp. 7-9.

20 C.F.R. § 404.1527(d) requires the ALJ to give a treating physician's opinion controlling weight if two conditions are met: (1) it is supported by medically acceptable clinical and laboratory diagnostic techniques and (2) it is not inconsistent with the other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). When the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must determine what weight, if any, to give that opinion and must give "specific reasons" in his opinion for that decision. SSR 96-2Pp (1996 WL 374188, *5). Further, the ALJ must consider various factors in determining what weight should be given including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;(4) consistency between the opinion and the record as a whole;(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion. 20 C.F.R. §404.1527(d)(2)(i),(d)(2)(ii)(3)-(6); *See also* SSR 96-5p; SSR 96-2p. After review of the record and the ALJ's decision, it is apparent that the ALJ failed to discuss his evaluation of the standards outlined above.

As stated previously herein, the ALJ found that Ms. Knight was limited in the four areas of functioning as follows:

"mild" restriction in activities of daily living;
"moderate" restrictions in social functioning;

>     "moderate" impairment in her ability to concentrate; and
>     "no" episodes of decompensation in the workplace.

(Tr. 23).

The ALJ then found that the evidence did not support a finding that Claimant met or equaled any of the Listed Impairments because "the evidence fails to satisfy the requirements" of the "A" "B" or "C" criteria of Listing 12.04.[6] (Tr. Id.). I agree

---

[6] Listing 12.04, in relevant part, provides as follows:
12.04 *Affective Disorders*: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements of C are satisfied...
And
 **B. Resulting in at least two of the following:**
 **1. Marked restriction of activities of daily living; or**
 **2. Marked difficulties in maintaining social functioning; or**
 **3. Deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner(in work settings or elsewhere); or**
 **4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or o experience exacerbation of signs and** symptoms(which may include deterioration of adaptive behaviors).
**OR**
 **C.** Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial
support, and one of the following:
1. Repeated episodes of decompensation, each of extended duration; or
2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

7

with Claimant that there are reported findings in the record -- submitted by Claimant's treating physicians -- which arguably support Claimant's argument that she meets at least some of the criteria of Listing 12.04. These reports were not adequately discussed at step three of the sequential evaluation. For example, the treating physician's opinions -- which were not discussed until step four of the sequential evaluation -- were afforded "minimal weight" because:

> "[t]hey are unsupported by his cryptic and meager treatment notes and inconsistent with the findings noted in claimants other medical treatment and examination records"(Tr. 26).

The ALJ does not identify the other medical evidence that was inconsistent with the opinions of Dr. Balu. Even more problematic is the ALJ's rejection of the doctors' opinions on the basis that they "were cryptic." There were at least 3 documented hospitalizations for psychiatric treatment in 2004 alone yet the ALJ found no episodes of decompensation.(Tr. 196, 221, 228). The ALJ did not cite -- nor does the undersigned find-- any evidence in the record to support the conclusion that Dr. Balu's records were insufficient to support his findings. Finally, the ALJ did not discuss whether he considered each of the 6 factors listed above were considered. This is problematic because Dr. Balu treated Claimant for a period of at least four years. Careful review of the entire record demonstrates that some of Dr. Balu's opinions are supported by other evidence that was not adequately discussed by the ALJ. For example, Dr. Balu's office notes stated that the claimant was assessed with a GAF[7] of 25 in March and October 2004. (Tr. 220, 227). When faced

---

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*See* 20 C.F.R. Pt. 404, Subpt. P., App. 1.(As of April 1, 2004)(emphasis added).

[7] Medical reports by psychiatrists and psychologists often contain assessments of psychological, social, and occupational functioning known as the The Global Assessment of Functioning ("GAF") Scale. A GAF code between 21 - 30 Behavior is considerably influenced by delusions or hallucinations OR serious impairment, in communication or judgment (e.g.,

with evidence in the record contradicting his or her conclusion, an ALJ must address that contradictory evidence and explain his rationale for rejecting it. *See Schoofield v. Barnhart*, 220 F.Supp. 2d 512, 519 (D. Md. 2002)

Simply stated, it is not clear from his decision whether the ALJ properly evaluated all of Ms. Knight's mental impairments at the second, third, fourth steps or fifth of the sequential evaluation. *See Baker v. Chater*, 957 F. Supp. 75, 79 (D. Md. 1996)(in evaluating the severity of mental impairments a special procedure must be followed by the Commissioner at each level of administrative review). Accordingly, I am unable to say that the ALJ's analysis with respect to Ms. Knight's impairments is supported by substantial evidence and the case will be remanded. On remand the ALJ is to explain her reasons for making these determinations in sufficient detail for the Court to conduct meaningful review of these findings. See 20 CFR §416.920a(e)(2).

For the above reasons, the Commissioner's decision is reversed and the case is remanded for further proceedings in accordance with the foregoing Memorandum. A separate Order shall issue.

Dated: 3/31/11  _____/s/_____
Paul W. Grimm
United States Magistrate Judge

---

sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)

*Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, p.32.